**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | **NO.   15-485** |
| | : | |
| **CORY D. FOSTER** | : | |

## MEMORANDUM

KEARNEY, J.                                                                            August 15, 2023

     A District of Delaware jury in April 2016 found Cory D. Foster guilty of being a felon in possession of a firearm in February 2015. Our jury in May 2016 found Mr. Foster guilty of Hobbs Act armed robberies of three gas convenience stores in late 2014 and carjacking a customer's car in one of the armed robberies. The same lawyer represented Mr. Foster in the trials in both Districts. We sentenced Mr. Foster to, among other things, two consecutive 300 months in custody sentences for using a firearm during and in relation to a crime of violence. Our Court of Appeals affirmed his conviction. The Supreme Court declined review of his conviction. Mr. Foster now pro se seeks habeas relief from our sentence arguing a completed Hobbs Act robbery and carjacking are not crimes of violence warranting the consecutive 300 months sentence. He also challenges the ineffectiveness of his trial counsel, a trial witness's truthfulness, and our robbery jury instruction. Our Court of Appeals earlier this year (long after Mr. Foster's convictions) instructed a completed Hobbs Act robbery is a crime of violence requiring the mandatory minimum 300 month sentence we imposed under the Armed Career Criminal Act. Our Court of Appeals earlier held carjacking is crime of violence. We find no possible basis for an ineffectiveness of counsel claim and we see no need for an evidentiary hearing. We find no basis to challenge the robbery jury instruction. We find no basis for a certificate of appealability.  We deny Mr. Foster's habeas petition.

## I.    Background

Pennsylvania judges sentenced Cory D. Foster on a variety of robbery and burglary charges before 2014. He continued under state court supervision in Fall 2014. Mr. Foster then robbed three gas convenience stations in our District brandishing a gun in Fall 2014. He carjacked a customer's car after one of his Fall 2014 robberies.

### *A Delaware federal jury convicts Mr. Foster in April 2016 of being a felon in possession of a firearm.*

Delaware State Police arrested Mr. Foster in February 2015 after observing him in the car identified as being the same car carjacked after one of the three Fall 2014 robberies in our District. The police found the stolen car and a firearm in Mr. Foster's possession in the parking lot of a Wilmington, Delaware shopping center.[1] A grand jury in the District of Delaware charged Mr. Foster with possession of a firearm by a convicted felon based on the recovery of the gun by Delaware State Police at the Wilmington shopping center in February 2015. The indictment proceeded to trial before Judge Andrews in April 2016. Attorney Douglas Dolfman represented Mr. Foster.

A Delaware State Police corporal testified he saw Mr. Foster in the passenger seat of the stolen car.[2] When additional officers arrived, Mr. Foster stood outside the car, appeared to clutch something in his hand, and when ordered to lie on the ground and show his hands, began to run away.[3] The Delaware State Police corporal testified he saw Mr. Foster's hand open and a gun fell to the pavement after another officer deployed a taser.[4] The State Police corporal testified Mr. Foster initially identified himself with the last name "Robinson" and had keys to the stolen car in his pants pocket.[5] A search of the car revealed the victim customer's wallet, gloves, rolls of duct tape, a backpack, and a bag containing duct tape wrappings.[6] The State Police corporal identified the firearm recovered from Mr. Foster in Delaware.[7]

A jury in the District of Delaware found Mr. Foster guilty of possessing a firearm by a felon in April 2016 after hearing evidence arising from his February 2015 arrest in the Wilmington shopping center.[8]

Judge Andrews sentenced Mr. Foster on August 25, 2016 to the statutory maximum of 120 months imprisonment and three years of supervised release.[9] Judge Andrews applied the enhancement under United States Sentencing Guidelines § 2K2.1(c)(1) because of Mr. Foster's use of the same firearm in connection with the three Hobbs Act robberies and the carjacking in this District.[10] By applying the enhancement, Mr. Foster's advisory guideline range increased from 63–78 months to 210–262 months.[11] Mr. Foster did not object to the enhancement in his Delaware sentencing.

Mr. Foster appealed from his Delaware conviction challenging Judge Andrews's evidentiary rulings, the sufficiency of evidence, and challenging Judge Andrews's application of the section 2K2.1(c)(1) enhancement. Our Court of Appeals affirmed Mr. Foster's conviction and sentence, including a finding Judge Andrews did not plainly err when he applied the section 2K2.1(c)(1) enhancement.[12]

Mr. Foster then moved to vacate his Delaware sentence with three claims including an ineffective assistance of counsel claim for failing to object to the section 2K2.1(c)(1) enhancement.[13] Judge Andrews denied Mr. Foster's habeas petition and found no basis to issue a certificate of appealability.[14] Mr. Foster did not appeal from Judge Andrews's denial of his habeas petition.

### *Our jury convicts Mr. Foster in May 2016 arising from the armed robberies.*

Our grand jury returned an indictment on October 8, 2015 charging Mr. Foster with his conduct in the armed robberies of the three gas station convenience stores and carjacking a

customer's car.  Our grant jury charged Mr. Foster with three counts of Hobbs Act robbery, one count of carjacking, and four counts of using, carrying, and brandishing a firearm during and in relation to a crime of violence under the Armed Career Criminal Act.[15]  We held a jury trial in May 2016 on this District's Grand Jury's charges. Attorney Dolfman again represented Mr. Foster.

The United States introduced evidence Mr. Foster and an accomplice robbed three gas station convenience stores at gunpoint in late 2014. The United States adduced the testimony of the three employees at each of the stores and one customer victimized in the third robbery. The victims' testimony showed a similar pattern for each robbery: Mr. Foster and his accomplice entered the convenience store at night wearing masks and gloves; the larger of the two men, identified as Mr. Foster, wielded a small, black, semi-automatic handgun; Mr. Foster forced the employee to open the cash register, confined each victim to a backroom or bathroom, bound and/or beat each victim, and stole money from them; and then stole cash, cigarettes, and other items from the store before departing.[16]  In the third robbery, Mr. Foster and his accomplice confined a customer in the bathroom and stole the customer's wallet and car, a silver Honda Accord, and Mr. Foster's accomplice drove off in a blue Chrysler Concorde.[17]

The United States adduced the testimony of the four victims of the robberies.[18]  Each testified to the robberies, including a description of the assailants. Each testified the handgun recovered by Delaware State Police from Mr. Foster's arrest in Delaware resembled the gun used during the robberies in size and color. The customer victim testified neither the handgun, nor rolls of duct tape, nor gloves were in his car before Mr. Foster stole it and identified his wallet found inside the car recovered in Delaware at the time of Mr. Foster's arrest there.[19]  The United States introduced surveillance video of each robbery and showed it to the jury. Each victim testified to

the physical characteristics of the larger, gun-wielding assailant, identified as Mr. Foster, at each robbery.

The United States adduced the testimony of Michael Hyman, Mr. Foster's probation officer of eighteen months.[20] Mr. Hyman testified he recognized Mr. Foster from the surveillance video. Officer Hyman testified he met with Mr. Foster on regular occasions; Mr. Foster had a distinctive walk with an "open gait" with "feet … kind of spread apart"; identified Mr. Foster from videos of the robberies; and identified at trial Mr. Foster as the larger of the two men in the video surveillance footage of the convenience stores from the robberies.[21] Officer Hyman testified he recognized Mr. Foster from the video based on facial features; his "very wide" nose and skin tone, height and weight, and Mr. Foster's gait.[22]

The United States adduced evidence from an FBI Special Agent who analyzed and mapped cell site information from Mr. Foster's cell phone records.[23] The Special Agent testified his mapping analysis of Mr. Foster's cell phone around the time of the robberies of each convenience store showed Mr. Foster's phone traveled from near his residence, to an identified cell site sector, to the victim business, and then back to Philadelphia.[24]

Mr. Foster's sister testified she owned the blue Chrysler Concorde used by Mr. Foster and transferred title to him one week before the first robbery and bought the cell phone (analyzed by the FBI Special Agent) which she gave to Mr. Foster for his use.[25]

Our jury convicted Mr. Foster of all charged offenses on May 26, 2016.[26] We scheduled sentencing for September 28, 2016.

### Mr. Foster moved to dismiss Attorney Dolfman before sentencing.

Mr. Foster moved to dismiss Attorney Dolfman three weeks before sentencing citing ineffectiveness and irreconcilable differences in their relationship.[27] We granted Mr. Foster's

motion after hearing, appointed the Federal Defender to represent Mr. Foster, granted Mr. Foster's oral motion for a psychiatric evaluation, and ordered a psychological evaluation to be included in the Probation Office's presentence investigation report, including the findings from the evaluation.[28]

The Federal Defender moved to withdraw as counsel based on a conflict of interest. We granted its motion and appointed attorney Russell M. Soloway from the Criminal Justice Act Panel to represent Mr. Foster.[29]

### *Mr. Foster moved to dismiss the carjacking and Hobbs Act robbery charges against him before sentencing.*

Mr. Foster requested a continuance of the sentencing for additional briefing. We granted the unopposed continuance and allowed Mr. Foster time to move to dismiss.[30] We rescheduled sentencing for March 25, 2017.

Mr. Foster immediately moved to dismiss and bar sentencing on the charges of using, carrying, and brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1).[31] Mr. Foster argued (1) carjacking is not a crime of violence under 18 U.S.C. § 924(c)(3); (2) Hobbs Act robbery is not a crime of violence under section 924(c)(3); and (3) Section 924(c)(3)'s residual clause is unconstitutionally vague and cannot support a conviction under the statute.[32]

The United States argued both carjacking and a completed Hobbs Act robbery are crimes of violence under section 924(c)(3).[33] At the time of the parties' briefing in 2016, our Court of Appeals had not decided whether a completed Hobbs Act robbery qualified as a crime of violence under section 924(c)(3)(A).

We denied the motion to dismiss, finding Mr. Foster's Hobbs Act robbery and carjacking convictions constitute crimes of violence under the elements clause of section 924(c) and did not

consider Mr. Foster's argument the residual clause of section 924(c)(3) is unconstitutionally vague.[34]

### *We sentenced Mr. Foster for his convictions in our District.*

We sentenced Mr. Foster on April 12, 2017 to a total term of prison of 714 months: thirty months for the Hobbs Act robberies and carjacking offense to run concurrently; eighty-four months for using and carrying a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(A)(ii); and the mandatory minimum of 300 months on two counts of using and carrying a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(C)(i) (a total of 600 months) to run consecutive to his other terms of incarceration.[35] We directed his incarceration would run concurrent with Judge Andrews's sentence in Delaware.

Mr. Foster wanted to appeal and orally moved for a new appointment of counsel for his appeal. We granted his oral motion, removed appointed Attorney Soloway, and appointed Attorney Karl Schwartz from the Criminal Justice Act Panel to represent Mr. Foster on appeal.[36]

### *Mr. Foster appealed from our judgment of sentence.*

Mr. Foster filed a counseled appeal from our April 12, 2017 judgment. He raised four issues: (1) whether we erred under Federal Rule of Evidence 701(b) by permitting police witnesses, who were not witnesses to the offenses and who had no prior familiarity with Mr. Foster, to testify Mr. Foster is one of two perpetrators depicted in the videos, and the same two perpetrators committed each of the three robberies charged in the indictment; (2) whether we plainly erred in identifying the perpetrator in the crime video as "the defendant" and describing as "credible" a detective's identification of Mr. Foster as the perpetrator; (3) the sufficiency of the evidence to establish Mr. Foster committed a carjacking and the related section 924(c)(1)(A) offense with no evidence establishing a nexus between an assault and taking of the vehicle; and (4) preserving an

issue of whether Hobbs Act robbery and carjacking are crimes of violation for offenses under section 924(c).[37]

Our Court of Appeals affirmed the judgment of conviction but did not address Mr. Foster's challenge to our determination the Hobbs Act robbery and carjacking convictions are crimes of violence under section 924(c). Our Court of Appeals noted Mr. Foster's challenge to our determination Hobbs Act robbery and carjacking are crimes of violence under the Armed Career Criminal Act but then noted his concession the court's decision in *United States v. Robinson*[38] finding Hobbs Act robbery and carjacking convictions can serve as predicate offenses for purposes of his section 924(c) convictions because of his contemporaneous conviction on a firearms offense.[39] Because Mr. Foster then conceded *Robinson* foreclosed his section 924(c) challenge, our Court of Appeals declined to address whether the residual clause of section 924(c)(3)(B) is void for vagueness.[40]

Mr. Foster filed a petition for certiorari to the United States Supreme Court. The Court denied certiorari.[41]

### *Mr. Foster pro se moved for habeas relief.*

Mr. Foster then pro se petitioned for habeas relief raising three grounds: (1) the section 924(c) convictions must be vacated for resentencing because the underlying predicate offense of Hobbs Act robbery is not a crime of violence; (2) ineffective assistance of trial counsel for failing to challenge the United States' failure to prove by direct evidence the firearm is the same as the firearm from the Delaware conviction; and (3) Probation Officer Hyman perjured himself when he testified he knew Mr. Foster for an extended period of time.[42] Mr. Foster alternatively seeks an evidentiary hearing to "further prove his meritorious ground for relief," resolve disputed factual issues, and expand an incomplete trial record.[43]

The United States opposed Mr. Foster's habeas petition.[44] The United States recommended we hold Mr. Foster's habeas petition in abeyance pending resolution by our Court of Appeals whether a completed Hobbs Act robbery is a crime of violence under section 924(c). We agreed and put Mr. Foster's habeas petition in suspense until our Court of Appeals addressed whether a completed Hobbs Act robbery is a crime of violence under section 924(c).[45]

### *Our Court of Appeals holds a completed Hobbs Act robbery is a crime of violence.*

Our Court of Appeals in *United States v. Stoney* in March 2023 held a completed Hobbs Act robbery is a crime of violence under section 924(c)(3)(A).[46] We promptly granted the United States leave to file a supplemental memorandum describing its position on Mr. Foster's challenge to the Hobbs Act robbery after *United States v. Stoney*.[47]

We allowed Mr. Foster leave to reply. Instead of addressing *Stoney*, Mr. Foster filed an "amended" motion for habeas relief.[48] We struck Mr. Foster's "amended" petition without prejudice to timely move for leave to amend his habeas petition by June 21, 2023, advising whether he is now withdrawing his other grounds or supplementing his earlier grounds and attaching the proposed amended petition.[49] Mr. Foster responded he wished to supplement his habeas petition to argue Hobbs Act robbery is not a crime of violence to serve as a predicate offense under section 924(c).[50] His supplemental argument also objects to our jury instruction on the definition of robbery.[51] Our Court of Appeals issued the mandate in *Stoney* following this briefing.

## II.   Analysis

Our Court of Appeals's mandate in *United States v. Stoney* now allows us to address Mr. Foster's habeas petition as we can now again address whether his three armed robberies leading to the Hobbs Act convictions are crimes of violence. And, as he later argued, whether the carjacking conviction represents a crime of violence notwithstanding the completed Hobbs Act robberies.

Congress allows a federal prisoner to seek habeas relief from his sentence under 28 U.S.C. § 2255 by moving to vacate, set aside, or correct his sentence in four circumstances: (1) the sentence imposed violates the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence is in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.[52] We construe a pro se section 2255 habeas petition liberally.[53] We may only vacate a sentence if we find "judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."[54]

A motion under 28 U.S.C. § 2255 "is reviewed much less favorably than a direct appeal of the sentence" and available only where "the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and … present[s] exceptional circumstances where the need for the remedy afforded by the writ … is apparent."[55] Collateral review under section 2255 "is not a substitute for direct review" and a petitioner "ordinarily may only raise claims in a 2255 motion that he raised on direct review."[56] Claims raised in a 2255 motion not raised on direct appeal are procedurally defaulted unless the petitioner can "prove either that he is actually innocent of the crime for which he was convicted, or that there is a valid cause for the default, as well as prejudice resulting from the default" such as ineffective assistance of counsel.[57]

Mr. Foster first raised three grounds for habeas relief: (1) the section 924(c) convictions must be vacated for resentencing because the underlying predicate offense of Hobbs Act robbery is not a crime of violence; (2) ineffective assistance of trial counsel for failing to challenge the United States' proof on the firearm used in the robberies is the same as the firearm from the

Delaware conviction; and (3) Probation Officer Hyman perjured himself when he testified he knew Mr. Foster for an extended period of time.

Mr. Foster supplemented the first ground with an argument our jury instruction on the definition of robbery—an "unlawful taking or obtaining of personal property from the person … against his will, by means of actual or threatened force *or violence* or fear of injury …"—indicates robbery can be completed non-violently.[58] Mr. Foster argues the words "or violence" means a Hobbs Act robbery—presumably by use of the word "or"—allows room for a non-violent robbery meaning a Hobbs Act robbery is not a crime of violence.  He also later argued the carjacking could not be a crime of violence.

## A.  We properly defined Hobbs Act robbery and carjacking as crimes of violence.

Congress through the Hobbs Act allows the United States to charge a person who is believed to "obstruct[], delay[], or affect[] commerce … by robbery."[59] Congress requires a conviction of Hobbs Act robbery carries a term of imprisonment of up to twenty years.[60]

But Congress through the Armed Career Criminal Act authorizes further incarceration if a convicted offense—here, a completed Hobbs Act robbery—qualifies as a "crime of violence."[61] Congress mandates a person may face an additional felony conviction and further punishment for using a firearm during the crime.[62] To qualify as a "crime of violence" under section 924(c), an offense must meet the Act's "elements clause," meaning "an offense that is a felony and … has as an element of the use, attempted use, or threatened use of physical force against the person or property of another."[63] The United States Supreme Court in *United States v. Taylor* instructed us to make this determination by applying a "categorical approach."[64] We use a categorical approach because section 924(c)(3)(A) requires the felony to have "*as an element* the use, attempted us, or threatened use of physical force."[65] When answering whether a felony "has as an element the use,

attempted use, or threatened use of physical force" we do not "inquir[e] into how any particular defendant may commit the crime."[66] "The only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force."[67]

To secure a conviction for a completed Hobbs Act robbery, the United States "must show that the defendant engaged in the 'unlawful taking or obtaining of personal property from the person ... of another, against his will, by means of actual or threatened force.'"[68] We are mindful of the distinctions between a completed robbery and an attempted robbery as detailed by the Court in *Taylor* applying the categorical approach and holding an ***attempted*** Hobbs Act robbery is ***not*** a crime of violence.[69] The Court, however, did not specifically address whether a ***completed*** Hobbs Act robbery satisfies the elements clause of section 924(c)(3)(A).[70] So we could not address Mr. Foster's habeas arguments until further guidance. We, like our colleagues in hundreds of other cases pending in this District, put Mr. Foster's habeas petition in suspense in February 2020 until our Court of Appeals had an opportunity to resolve the issue.

### 1. Our Court of Appeals recently confirmed a completed Hobbs Act robbery qualifies as a crime of violence under section 924(c)(3)(A).

Our Court of Appeals held a completed Hobbs Act robbery is categorically a crime of violence under section 924(c)(3)(A) in March 2023.[71] The court explained the categorical approach to determine whether an offense qualifies as a crime of violence under section 924(c)(3)(A) requires us to determine "whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force."[72] The court further explained "to win a conviction for a *completed* robbery the government must show that the defendant engaged in the 'unlawful taking or obtaining of personal property from the person ... of another, against his will, by means of actual or threatened force.'"[73]

The court then applied its reasoning to the language of the Hobbs Act  and concluded a completed Hobbs Act robbery qualifies as a crime of violence.[74]

Mr. Foster challenges his section 924(c) conviction arguing: (1) the Supreme Court in *Davis* held the "residual clause" of section 924(c)(3)(B) is unconstitutionally vague and (2) Hobbs Act robbery does not qualify as a crime of violence under the "elements clause." [75]

We easily dispose of Mr. Foster's arguments. First, while it is correct the Supreme Court in *Davis* held the residual clause of section 924(c)(3)(B) is unconstitutionally vague, our Court of Appeals in *Stoney* held a completed Hobbs Act robbery categorically constitutes a crime of violence under the elements clause of section 924(c)(3)(A), not the residual clause found constitutionally infirm in *Davis*. This holding does not run afoul of *Davis* and our Court of Appeals specifically noted *Davis* allows an analysis under the elements clause of section 924(c)(3)(A).[76] We reject Mr. Foster's argument based on *Davis*.

Mr. Foster next argues a Hobbs Act robbery does not qualify as a crime of violence under the elements clause. As fully explained, the Court of Appeals's *Stoney* decision disposes of this argument: a completed Hobbs Act robbery is categorically a crime of violence under section 924(c)(3)(A).

Mr. Foster supplemented his habeas petition by arguing our jury instruction on the definition of "robbery" is erroneous because our instruction included the term "or violence" indicating, at least as Mr. Foster sees it, a robbery can be completed non-violently meaning a Hobbs Act robbery cannot be a crime of violence.[77] Our instruction is not erroneous; we gave the instruction defining a Hobbs Act "robbery" contained in the Third Circuit Model Jury Instructions which, in turn, is the definition provided by Congress in the Hobbs Act. And, as fully explained, a completed Hobbs Act robbery categorically constitutes a crime of violence. We deny Mr. Foster's

habeas petition challenging his completed Hobbs Act robbery conviction as a crime of violence under the elements clause of section 924(c)(3)(A) as foreclosed by *Stoney*.

### 2. Carjacking qualifies as a crime of violence.

Mr. Foster's reply in support of his habeas petition adds another ground for habeas relief; his carjacking conviction under 18 U.S.C. § 2119 is not a crime of violence under section 924(c).[78] This argument is also without merit.

On May 11, 2021, our Court of Appeals in *United States v. Smith* denied a request for a certificate of appealability concluding "reasonable jurists would not debate the conclusion that carjacking in violation of 18 U.S.C. § 2119 categorically constitutes a crime of violence under the elements clause of section 924(c)(3)(A)."[79] Since our Court of Appeals' opinion in *Smith*, several of our colleagues denied the same argument Mr. Foster advances, concluding carjacking in violation of 18 U.S.C. § 2119 is categorically a crime of violence under the elements clause of section 924(c)(3)(A).[80]

Mr. Foster moved to dismiss the carjacking charge in a counseled motion related to his motion to continue sentencing.[81] We rejected his argument carjacking is not a crime of violence under section 924(c).[82] We reasoned carjacking in violation of 18 U.S.C. § 2119 constitutes a crime of violence under the elements clause of section 924(c) and did not consider Mr. Foster's argument the residual clause is unconstitutionally vague.[83] We will not depart from our reasoning at sentencing now bolstered by our Court of Appeals's opinion in *Smith*. We deny Mr. Foster's habeas petition challenging his carjacking conviction as a crime of violence under the elements clause of section 924(c)(3)(A).

**B. There is no need for an evidentiary hearing on Mr. Foster's ineffective assistance of trial counsel claim because it is not supported by the record.**

Mr. Foster next claims ineffectiveness of trial counsel Attorney Dolfman. Congress in section 2255(b) requires us to hold an evidentiary hearing "[u]nless the motion and the files and records of the case *conclusively* show that the prisoner is entitled to no relief …"[84] To determine whether a hearing is necessary, we are directed by our Court of Appeals to apply a two-pronged inquiry: (1) we must "consider[ ] as true all appellant's nonfrivolous factual claims"; and (2) we must "determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show ineffective assistance of counsel."[85] The second prong is evaluated under *Strickland v. Washington*, requiring Mr. Foster show deficiency of his counsel's performance and prejudice to his defense.[86] Mr. Foster need not "prove" anything to warrant a hearing; if his nonfrivolous claims do not conclusively fail either prong of the *Strickland* test, we must hold a hearing.[87] This is a "reasonably low threshold for habeas petitioners to meet."[88]

But Mr. Foster fails to meet even this low threshold. Mr. Foster's claims of ineffective assistance of Attorney Dolfman are contradicted by the record. Mr. Foster contends Attorney Dolfman rendered ineffective assistance at trial by failing to challenge the United States' alleged failure to prove the firearm recovered in his Delaware arrest is the same firearm used in the Pennsylvania robberies and failed to prove the firearm recovered in Delaware is "authentic."[89] Mr. Foster argues Attorney Dolfman's ineffective assistance resulted in an enhanced sentence under the United States Sentencing Guidelines § 2K2.1(c)(1).[90]

In denying Mr. Foster's habeas petition based on the ineffective assistance of counsel claim for failing to object to the section 2K2.1(c)(1) enhancement, Judge Andrews noted our Court of Appeals reviewed the record and determined at "least three categories of direct and circumstantial evidence" supported the conclusion the firearm "recovered in Delaware was the same gun used in

the Pennsylvania crimes."[91] Judge Andrews further found Mr. Foster's argument Attorney Dolfman rendered ineffective assistance failed to satisfy either prong of the *Strickland* standard; he failed to show a reasonable probability he would have received a lower sentence but for Attorney Dolfman's failure to object to the application of section 2K2.1(c)(1) or Attorney Dolfman's deficient performance.[92]

The record conclusively shows Mr. Foster is not entitled to relief on his ineffective assistance claim before us either. Our Court of Appeals after reviewing the Delaware conviction concluded the record included evidence supporting Judge Andrews's conclusion the firearm recovered in Delaware is the same firearm used in the Pennsylvania robberies and carjackings.[93] And Judge Andrews rejected the identical argument made by Mr. Foster in his Delaware habeas petition. Attorney Dolfman argued this point. He did not succeed. Failure to win an argument is not ineffective assistance. We need not hold a hearing. We deny Mr. Foster's ineffective assistance claim.

### C. Mr. Foster's challenge to the testimony of Probation Officer Hyman is procedurally defaulted, he fails to state a valid ineffective assistance of counsel claim, and the record does not support the merits of his challenge even if we considered it.

Mr. Foster's third ground for habeas relief is a challenge to the veracity of Probation Officer Hyman's testimony at trial. Mr. Foster contends his state probation officer, Officer Hyman, lied about the length of time he knew Mr. Foster.

Officer Hyman testified at trial he has known Mr. Foster for "a little bit less than two years" … "a little bit more than a year, year-and-a-half."[94] Mr. Foster contends this is false and Officer Hyman perjured himself to mislead us "into believe [Officer Hyman] was more familiar with [Mr. Foster] than he actually was" and conflict with the time periods of Mr. Foster's earlier periods of custody and parole supervision. According to Mr. Foster, he met Officer Hyman in July 2014 and

would only have known him for approximately nine months.[95] Mr. Foster asks us to "subpoena the parolee sign in book for the Ogontz District of Philadelphia ..., view it, and then dismiss [Officer] Hyman's testimony as evidence" and order a new trial.[96]

### 1. Mr. Foster's claim is procedurally defaulted.

Mr. Foster concedes he did not raise the issue of Officer Hyman's alleged perjured testimony on direct appeal, attributing his failure to do so to ineffective assistance of counsel.[97] Mr. Foster could have, but did not, raise the issue of Officer Hyman's testimony on direct appeal. As such, this claim is procedurally defaulted and cannot be raised in a collateral proceeding under section 2255 unless Mr. Foster can establish cause and prejudice or actual innocence.

Mr. Foster does not claim actual innocence. He claims ineffective assistance of counsel for failing to challenge Officer Hyman's trial testimony on direct appeal. Ineffective assistance of counsel rising to the level of a constitutional violation constitutes cause to excuse procedural default.[98]

### 2. Mr. Foster fails to show his attorney's performance as to Officer Hyman's testimony is deficient and the performance prejudiced his defense.

When evaluating ineffective assistance of counsel claims in violation of the Sixth Amendment, we apply the two-part test of *Strickland v. Washington*; counsel is presumed effective unless Mr. Foster establishes: (1) deficient performance by counsel; and (2) the deficient performance prejudiced the defense.[99] We need not analyze both elements in "the same order or even ... address both components of the inquiry if the defendant makes an insufficient showing on one" and we "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."[100]

Mr. Foster fails to meet either prong of *Strickland*. With the exception of writing "ineffective counsel" on his 2255 petition as an explanation as to why he did not directly appeal

the issue of Officer Hyman's testimony, Mr. Foster does not explain how his attorney's performance is deficient or how such deficient performance prejudiced him.

Under *Strickland's* prejudice prong, Mr. Foster must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[101] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[102] Mr. Foster fails to do so.

Mr. Foster concedes Officer Hyman acted as his parole officer for approximately nine months. He argues Officer Hyman's testimony at trial he (Officer Hyman) knew Mr. Foster for "a little bit less than two years" or "a little bit more than a year, year-and-a-half" somehow misled "the court into believing" Officer Hyman "was more familiar with [Mr. Foster] than he actually was." Mr. Foster, while conceding he knew Officer Hyman for approximately nine months, does not explain how a timing difference (even assuming there is one) in Officer Hyman's testimony (even if perjured) prejudiced him in the context of Officer Hyman's familiarity with Mr. Foster to be able to make an identification at trial.

And it does not appear Officer Hyman's testimony is incorrect. Mr. Foster concedes Officer Hyman became his parole agent in July 2014 and the two met "at the third Thursday in July 2014 and went on that way until Jan[uary] 2015" and did not see Officer Hyman after January 2015.[103] At the May 2016 trial, Officer Hyman testified he knew Mr. Foster for "a little bit less than two years" or "[a] little bit more than a year, year-and-a-half," approximately a year-and-a-half from their first meeting in July 2014.

Mr. Foster does not explain how striking or limiting Officer Hyman's claimed perjured testimony would have resulted in a different outcome. The United States adduced the testimony of the four victims of the robberies, each of whom reviewed the surveillance video of each robbery

and testified to the physical characteristics of the assailants and the handgun used during the robberies. And the United States adduced evidence from an FBI Special Agent who testified his mapping analysis of Mr. Foster's cell phone around the time of the robberies of each convenience store showed Mr. Foster's phone traveled from near his residence, to an identified cell site sector, to the victim business, and then back to Philadelphia. The United States adduced the testimony Mr. Foster's sister who testified she owned the blue Chrysler Concorde used by Mr. Foster and transferred title to him one week before the first robbery and bought the cell phone (analyzed by the FBI Special Agent) which she gave to Mr. Foster for his use. Based on the overwhelming evidence, the jury found Mr. Foster guilty on all charges on May 26, 2016. Mr. Foster does not explain how his counsel's failure to challenge Officer Hyman's testimony would have resulted in a different outcome.

Mr. Foster fails to establish prejudice. We need not hold an evidentiary hearing as to Attorney Dolfman's alleged ineffectiveness because Mr. Foster's claims are frivolous and the record conclusively shows he is not entitled to relief.

### D. We decline to issue a certificate of appealability.

Congress in section 2253(c)(1)(B) provides "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from -- . . . the final order in a proceeding under section 2255."[104] We may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."[105] A petitioner meets this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[106] Mr. Foster fails to meet this standard. We decline to issue a certificate of appealability. Reasonable jurists could not

disagree with our conclusion Mr. Foster's constitutional claims are frivolous and not supported by the record.

## III. Conclusion

We deny Mr. Foster's 2255 petition. No evidentiary hearing is required because the record conclusively shows he is not entitled to relief. Mr. Foster failed to make a substantial showing of the denial of a constitutional right or shown jurists of reason could disagree with our conclusion, thus, there is no basis to issue a certificate of appealability.

---

[1] ECF No. 91, Notes of Testimony ("N.T.") at 36–59.

[2] *Id.* at 39.

[3] *Id.* at 40–43.

[4] *Id.* at 44.

[5] *Id.* at 56–57.

[6] *Id.* at 53–55.

[7] *Id.* 45–47.

[8] *Foster v. United States*, No. 15-cr-21 (D. Del.).

[9] *Id.*, 2022 WL 2291199, at *2 (D. Del. June 24, 2022).

[10] *Id.*, 2022 WL 2291199, at *2, n. 2. Judge Andrews applied the enhancement because the presentence report concluded Mr. Foster used the same firearm recovered in the Delaware arrest to commit the Hobbs Act robberies and carjacking in Pennsylvania. *Foster*, 2022 WL 2291199, at *2, n. 2; *United States v. Foster*, 891 F.3d 93, 102–03 (3d Cir. 2018).

[11] *Foster*, 891 F.3d at 103.

[12] *Id.* at 102–03, 113–14.

[13] *Foster*, 2022 WL 22991199, at *4.

[14] *Id.* at *8.

[15] ECF No. 1.

[16] *United States v. Foster*, 734 F. App'x 129, 130 (3d Cir. 2018).

[17] *Id.*

[18] ECF No. 90, N.T. at 11–30, 63–98, 193–209; ECF No. 91, N.T. at 7–34.

[19] ECF No. 91, N.T. at 22.

[20] The jury was not told of Mr. Hyman's position as Mr. Foster's probation officer, only as a state employee who met with Mr. Foster on a regular basis.

[21] ECF No. 91, N.T. at 116–18. Again, we did not allow the jury to hear Officer Hyman served as Mr. Foster's parole officer. Officer Hyman testified to his position as a state employee who knew Mr. Foster. *Id.* at 115–16.

[22] *Id.* at 119–24.

[23] ECF No. 91, N.T. at 128–172.

[24] *Id.*, N.T. at 139–158, 161–170.

[25] *Id.*, N.T. at 60–113.

[26] ECF No. 34.

[27] ECF No. 45.

[28] ECF No. 49.

[29] ECF No. 51.

[30] ECF No. 59.

[31] Congress in section 924(c)(1)(A) provides "any person who, during and in relation to any crime of violence … for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possess a firearm, shall, in addition to the punishment provided for such crime of violence …" be sentenced to additional terms of imprisonment. 18 U.S.C. § 924(c)(1)(A).

[32] ECF Nos. 61, 63.

[33] ECF Nos. 62, 67.

[34] ECF No. 68.

[35] ECF No. 77. Congress provides in section 924(c)(1)(C)(i) if the defendant violates subsection 924(c) after an earlier conviction becomes final, the person is subject to a minimum sentence of twenty-five years. The term of imprisonment must run consecutively. *Id.* § 924(c)(1)(D)(ii). The parties did not dispute earlier final convictions in Pennsylvania for, among other things, robbery and burglary involving firearms. Mr. Foster committed the convicted offenses before us while on probation for his earlier convictions.

[36] ECF No. 78.

[37] *United States v. Foster*, 734 F. App'x 129 (3d Cir. 2018).

[38] 844 F.3d 137 (3d Cir. 2016), *abrogated by United States v. Davis*, 139 S.Ct. 2319, 204 L.Ed 2d 757 (2019).

[39] *Foster*, 734 F. App'x at 132, n. 5.

[40] *Id.*

[41] *Foster v. United States*, 139 S.Ct. 789, 202 L.Ed.2d 585 (2019).

[42] ECF No. 95. The United States concedes his petition is timely as having been filed within a year after the Supreme Court denied certiorari.

[43] *Id.* at 33 (using the pagination assigned by the CM/ECF docketing system).

[44] ECF No. 97. Mr. Foster filed a reply. ECF No. 99.

[45] ECF No. 98.

[46] 62 F.4th 108 (3d Cir. 2023). The Court of Appeals issued its mandate on June 20, 2023.

[47] ECF No. 102. The United States filed its supplemental memorandum on April 5, 2023. ECF No. 103.

[48] ECF No. 104.

[49] ECF No. 105.

[50] ECF No. 106.

[51] *Id.*

[52] 28 U.S.C. § 2255(a).

[53] *United States v. Sotomayor*, 146 F. Supp. 3d 667, 668 (E.D. Pa. 2015).

[54] 28 U.S.C. § 2255(b).

[55] *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (cleaned up).

[56] *Hodge v. United States*, 554 F.3d 372, 378–79 (3d Cir. 2009).

[57] *Id.* at 379 (citing *Bousely v. United States*, 523 U.S. 614, 621 (1988)).

[58] ECF No. 106 at 1 (emphasis added).

[59] 18 U.S.C. § 1951(a). Section 1951(a) provides: "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both."

As used in section 1951, "robbery" is defined as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining." *Id.* § 1951(b)(1).

[60] 18 U.S.C. § 1951(a).

[61] 18 U.S.C. § 924.

[62] *Stoney*, 62 F.4th at 110. A conviction on a "crime of violence" under section 924(c)(3)(A) can also increase a federal sentence by imposition of a mandatory minimum sentence.

[63] 18 U.S.C. § 924(c)(3)(A). The Supreme Court in *United States v. Davis*, 139 S.Ct. 2319, 204 L.Ed.2d 757 (2019), held the "residual clause" of section 924(c)(3)(B) is unconstitutionally vague. *Id.*, 139 S.Ct. at 2336. The upshot of the *Davis* decision is the residual clause may no longer define a "crime of violence," leaving only the "elements clause" of section 924(c)(3)(A) to define "crime of violence." We today, like our Court of Appeals in *Stoney*, focus on the elements clause.

[64] *United States v. Taylor*, 142 S.Ct. 2015, 2020, 213 L.Ed.2d 349 (2022).

[65] *Id.* (quoting 18 U.S.C. § 924(c)(3)(A)) (emphasis in original).

[66] *Id.*

[67] *Id.*

[68] *Id.* (quoting 18 U.S.C. § 1951(b)).

[69] *Id.*

[70] *Id.* ("Whatever one might say about *completed* Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause.") (emphasis in original).

[71] *Stoney*, 62 F. 4th at 113–14.

[72] *Id.* at 113 (quoting *United States v. Taylor*, 142 S.Ct. at 2020).

[73] *Id.* (emphasis in original).

[74] *Id.* at 113–14.

[75] ECF No. 99 at 2.

[76] *Stoney*, 62 F.4th at 111, n. 2.

[77] ECF No. 106 at 1.

[78] ECF No. 99 at 2.

[79] *United States v. Smith*, No. 19-2257, 2021 WL 2135947 (3d Cir. May 11, 2021). Section 2119 provides: "Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall--(1) be fined under this title or imprisoned not more than 15 years, or both, (2) if serious bodily injury . . . results, be fined under this title or imprisoned not more than 25 years, or both, and (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death." 18 U.S.C. § 2119.

[80] *United States v. Galtogbah*, No. 07-cr-136-3, 2022 WL 874944, at *2 (E.D. Pa. Mar. 23, 2023) (denying habeas petition challenging carjacking in violation of section 2119 is a crime of violence under the elements clause of section 924(c)); *United States v. Tailey*, No. 08-cr-16, 2022 WL 162710 at * 1 (E.D. Pa. Jan. 18, 2022) (denying habeas petition, finding carjacking in violation of section 2119 is categorically a crime of violence under the elements clause of section 924(c)); *United States v. Carstarphen*, No. 05-cr-467-1, 2022 WL 137725, at *1 (E.D. Pa. Jan. 14, 2022) (same); *United States v. Jackson*, No. 93-cr-127, 2021 WL 4948628, at *1 (E.D. Pa. Oct. 25, 2021) (same).

[81] ECF No. 61.

[82] ECF No. 68.

[83] *Id.*

84 *United States v. Scripps*, 961 F.3d 626, 631-32 (3d Cir. 2020) (quoting *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005) (emphasis in original)).

85 *United States v. Arrington*, 13 F.4th 331, 334 (3d Cir. 2021) (quoting *United States v. Dawson*, 857 F.2d 923, 927–28 (3d Cir. 1988)).

86 *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

87 *Id.* at 335 (quoting *Dawson*, 857 F.2d at 928).

88 *Id.* at 334 (quoting *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005)).

89 ECF No. 95 at 37.

90 *Id.* at 36. U.S.S.G. § 2K2.1(c)(1) provides for a sentencing enhancement "[i]f the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition cited in the offense of conviction with knowledge or intent that it would be used or possessed in connection with another offense …" "Section 2K2.1(c)(1) was amended in 2014 to limit its application only to instances in which the defendant used the exact same firearm 'cited in the offense of conviction' in connection with another offense." *Foster*, 2022 WL 2291199, at *4 (citing U.S.S.G Suppl. to App. C, Amend. 784, Reason for Amendment).

91 *Foster*, 2022 WL 2291199, at *4 (quoting *Foster*, 891 F.3d at 113–15).

92 *Id.*

93 *Foster*, 891 F.3d at 113–15.

94 ECF No. 91, N.T. at 115, lines 7–10.

95 ECF No. 95 at 34.

96 *Id.* at 35.

97 *Id.* at 7.

98 *Hodge*, 554 F.3d at 379.

99 *Strickland*, 466 U.S. at 687.

100 *Id.* at 697.

101 *Id.* at 694.

102 *Id.*

[103] ECF No. 95 at 34–35.

[104] 28 U.S.C. § 2253(c)(1)(B).

[105] *Id.* § 2253(c)(2).

[106] *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (cleaned up); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (to satisfy section 2253(c), the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").